CENTRAL AGUIRRE SUGAR Co., Plaintiff and Appellee, *v.* MANUEL V. DOMENECH, TREASURER OF PUERTO RICO, ETC., Defendant and Appellant.

No. 7421.   Argued December 20, 1938.—Decided June 21, 1939.

*B. Fernández García, Attorney General, (R. Cordovés Arana, Former Assistant Attorney General,* on the brief) *and R. García Cintrón, Assistant Attorney General,* for appellant. *Hartzell, Kelly & Hartzell* and *R. O. Fernández,* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

The district court, in an action to recover taxes paid under protest, overruled a demurrer to the complaint. This is assigned as error. The demurrer was for want of facts sufficient to constitute a cause of action. The question is whether a certain self-propelling mechanical tiller or cultivator was a tractor within the meaning of that word as used in paragraph 8 of Section 16 of the Internal Revenue Law as amended in 1931 (Laws of that year, pp. 504, 508).

Plaintiff alleged:

"That in July 1933, plaintiff imported a complete automatic mechanical plow (Fowler Gyrotiller No. 19,606). The Fowler Gyrotiller is a plow that in one operation breaks, turns and pulverizes the soil, prepares the ridges and the furrows and leaves the ground ready for planting. It cannot be used except for cultivating the soil. This machine or agricultural implement is composed of two cylindrical discs to each of which several knives or blades are bolted. These discs turn to the right as the whole machine moves slowly forward, breaking, turning and pulverizing the soil. It has two ordinary plows to make the furrows and the ridges necessary for the planting

of cane.  The said machine or agricultural implement has a Diesel engine that develops power, *90% of which is transmitted directly to the said rotary tillers and the remaining 10% is used as a propelling force.*  The machine weights some 22 tons, that is to say, more than double the weight of the heaviest tractor made.  It costs four times as much as the highest priced tractor.  It travels at a minimum speed of ½ mile an hour, while the minimum speed of a tractor is two miles an hour.  In order to prevent the said agricultural implement from sinking into the soil or stalling, the same is mounted on two lateral sets of pontoon wheels and one of steel in the center of the front part of the machine, all with a broad surface in order to sustain the weight, *but without spikes, dogs or cleat lugs to prevent skidding.* . . . It has never been used and advertised as a tractor; nor can it be used as such.  *The clutches which control the wheels are inadequate for the transmission of all the power developed by the motor to the wheels.*"

Obviously, the machine is essentially a rotary plow.  It is a fair inference from the description just quoted that the breaking, and for the most part, the pulverization of the soil—the real plowing—is done by the rotary tillers.  The soil, after it has been broken and partially pulverized by the rotary tillers is furrowed and banked between furrows in one continuous operation by the two "ordinary plows".  It may be conceded that these "ordinary plows"—by which is meant, we take it, the old fashioned plowshare and moldboard—are drawn or dragged by the machine of which they form a part.  Only 10 per cent of the horse power developed by the Diesel engine is required or available for locomotion and—given the weight of the machine itself—only a negligible proportion of that 10 per cent is utilized in drawing or dragging the ordinary plows.  Ninety per cent of the total horse power developed by the engine is applied directly to the rotary tillers which are neither drawn nor dragged by the machine, nor made to turn or function by the forward or backward movement of the machine.  The clutches which control the driving wheels were inadequate for the transmission to those wheels of all the power developed by the engine.

The wheels themselves or the tracks on which the machine travels were not equipped with spikes, dogs or cleat lugs with which to grip the ground and so provide the adhesive friction upon which traction depends. Manifestly, the machine was not designed or intended for drawing heavy loads or any appreciable load other than its own weight. On the contrary, it was designed and used primarily for turning the rotary tillers, not by traction but by direct application of power while the machine was in motion. If this were a case of first impression, we well might hesitate before classifying such a machine as a tractor.

On the other hand when tractors are engaged in stationary work, much of their power is used for the operation of other machinery. Whether a 22 ton self-propelling machine which depends for locomotion upon the mechanism used by tractors—being in fact mounted on "two lateral sets of pontoon wheels" or "crawler tracks"—may be classified as a tractor is, at least, debatable ground. Thus among the new words in Webster's New International Dictionary, a "tank" is defined as follows: (Italics ours.)

"A kind of self-propelling engine consisting of a casement of heavy armor plates mounted on a *tractor* (esp. of the Caterpillar type) . . . "

So perhaps it might well be argued that any heavy, self-propelling, slowly moving machines "mounted on a tractor" is to all practical intents and purposes a tractor. The mere absence of spikes, dogs or cleat lugs may be compensated and perhaps accounted for by the excessive weight of the machine as compared with the ordinary type of tractor. In any event, the question is not new in this Court. The complaint in the instant case cannot be distinguished from the complaint in *Russell & Co.* v. *Domenech,* 50 P.R.R. 50 wherein this Court held that a Gyrotiller, differing in no important detail from the machine in the case at bar, was a tractor within the meaning of that term as used in paragraph 8 of

Section 16, *supra.* That case was affirmed in *Russell & Co.* v. *Sancho Bonet,* 92 Fed. (2d) 821, where the Circuit Court of Appeals said:

"This court is unable to say that the Supreme Court of Puerto Rico was clearly wrong in ruling and holding that the machine described is plaintiff's complaint was a tractor and taxable as such under the provisions of Section 16, par. 8, of the Internal Revenue Law of Puerto Rico 1925, No. 85, as amended by Act No. 83, section 16, par. 8, of 1931."

Appellee insists that, in the instant case, any want of sufficient facts in the complaint has been supplied by the evidence. We have examined the evidence. It tends to clarify and to emphasize the importance of the averments contained in the complaint. Beyond this, it adds little or nothing to those averments as we have construed them. As far as the question already discussed is concerned, we find no appreciable difference between the facts stated in the complaint and the facts established at the trial.

Upon the authority of the Russell case, *supra,* the judgment appealed from must be reversed and the action will be dismissed.

Mr. Chief Justice Del Toro and Mr. Justice De Jesús took no part in the decision of this case.